IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JAMES M. SAYLOR, | **8:20CV264** |
| Plaintiff, | |
| vs. | **MEMORANDUM AND ORDER** |
| SCOTT R. FRAKES, in his official capacity, | |
| Defendant. | |

## I. INTRODUCTION

Plaintiff, James Saylor, an inmate in the custody of the Nebraska Department of Correctional Services ("NDCS"), brings this action pursuant to Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act" or "RA"). In general, Saylor alleges in his Second Amended Complaint (Filing 51) that he suffers from post-traumatic stress disorder ("PTSD") as a result of having been brutally attacked by other prisoners in May 2002, and since then has been held in solitary confinement, with the exception of a 36-month period between October 2007 and September 2010, when he was placed in a single cell in a protective custody unit, and an 18-month period between July 2016 and January 2018, when he was assigned to a mental health unit. Upon the court's initial review of the Second Amended Complaint, conducted pursuant to 28 U.S.C. § 1915A, it was determined that Saylor stated plausible claims for relief under the ADA and RA for (1) disparate treatment and (2) failure to make reasonable accommodations insofar as Saylor "alleges that because of his PTSD he has been placed in solitary confinement and has been excluded from participation in or denied the benefits of certain prison services, programs, and activities, …." (Filing 54 at 4-5.) The court also determined, however, that to the extent Saylor "complains he has not received proper treatment for his PTSD, he cannot obtain relief under the ADA or RA." (Filing 54 at 4.)

The case proceeded to service of process and the sole defendant, Scott R. Frakes, in his official capacity as Director of NDCS, responded by filing a motion to dismiss Saylor's claims under Rule 12(6)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. (See Filing 61.) Frakes contends Saylor's claims "are barred by the doctrine of res judicata because [he] has previously litigated the same claims in two previous suits before the Court." (*Ibid*.)

For the reasons discussed below, the court concludes that Frakes' motion to dismiss should be granted, and that the Second Amended Complaint should be dismissed with prejudice.

## II. STANDARD OF REVIEW

To survive a motion to dismiss, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard does not require detailed factual allegations, but it does require more than labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (1955). Furthermore, "a formulaic recitation of the elements of a cause of action will not do." *Id.* A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. A claim is plausible on its face when the factual content pled "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This plausibility standard requires the possibility, not probability, of the alleged acts. *Id.*

To survive dismissal for failure to state a claim under 12(b)(6), a complaint must raise a claim of entitlement to relief. In reviewing a motion to dismiss, the court must assume all well-plead factual allegations are true and construe the complaint, as well as all reasonable inferences arising from it, in the light most favorable to the non-moving pleader. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). However, the court will not, "blindly accept the legal conclusions drawn by the pleader from the facts." *Id.* "When the allegations in a complaint, however true, could not raise a claim of entitlement to relief, the complaint should be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." *Hawkins Constr. Co. v. Peterson Contractors, Inc.*, 970 F. Supp. 2d 945, 949 (D. Neb. 2013).

"When considering a Rule 12(b)(6) motion, the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." *Ashford v. Douglas Cnty.*, 880 F.3d 990, 992 (8th Cir. 2018) (quoting *Smithrud v. City of St. Paul*, 746 F.3d 391, 395 (8th Cir. 2014)); *see Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003) ("The district court may take judicial notice of public records and may thus consider them on a motion to dismiss."). The court can take judicial notice of its own records and files, and facts which are part of its public records. *United States v. Jackson*, 640 F.2d 614, 617 (8th Cir. 1981). Judicial notice is particularly applicable to the court's own records of prior litigation closely related to the case before it. *Id*. The court can also take judicial notice of proceedings in other courts if they relate directly to the matters at issue. *Conforti v. United States*, 74 F.3d 838, 840 (8th Cir. 1996).

As per Frakes request, the court will take judicial notice of its own records in *Saylor v. Kohl*, No. 4:12-CV-3115 ("*Saylor I*"), including:

- Filing 178, *order denying defendants' motion for summary judgment*, 2014 WL 73335741 (D. Neb. Dec. 22, 2014) (Bataillon, J.)

- Filing 190, *order on appeal reversing and remanding with directions*, 812 F.3d 637 (8th Cir.), *as amended* (Jan. 29, 2016)

- Filing 222, *order dismissing on remand*, 2016 WL 8201925 (D. Neb. Nov. 28, 2016) (Bataillon, J.)

- Filing 225, *motion to reconsider with attached proposed third amended complaint* (filed Dec. 27, 2016)

- Filing 230, *order denying motion to reconsider*, 2017 WL 486921 (Feb. 6, 2017) (Bataillon, J.)

and in *Saylor v. Nebraska*, No. 8:17-CV-472 ("*Saylor II*"), including:

- Filing 1, *notice of removal with attached state-court complaint* (filed Dec. 8, 2017)

- Filing 28, *order remanding to state court*, 2018 WL 1732178 (D. Neb. Apr. 10, 2018) (Bataillon, J.)

## III. BACKGROUND OF RELATED PROCEEDINGS

In 2002, while a prisoner at the Nebraska State Penitentiary (NSP), Saylor was allegedly attacked, beaten, and raped by other inmates. In 2005 Saylor was diagnosed with Post-Traumatic Stress Disorder (PTSD) as a result of the 2002 attack, and he began seeing Dr. Glen Christensen, a psychiatrist who contracted with NDCS. Saylor saw Dr. Christensen monthly for treatment. In April 2005, Saylor filed a complaint in state court alleging that the State of Nebraska and NDCS failed to protect him from the assault and failed to properly treat him after the assault. The trial was held in 2009, and in 2010 the state court entered an order in favor of Saylor, finding that the staff was negligent in failing to provide him with reasonably adequate protection from the 2002 assault. The court also found that Saylor received inadequate medical treatment from Dr. [Mohammad] Kamal from 2002 to 2005. Saylor was awarded $250,000 in damages.

*Saylor I*, Filing 190 (812 F.3d at 641).

In the state court action, the court also found, however, that the Nebraska Department of Corrections had provided medically appropriate care from and after March 31, 2010. *Saylor v. State of Nebraska*, No. CI 05-1597 (March 31, 2010); *see Saylor v. Kohl*, No. 4:12cv3115 (D. Neb.), Filing No. 143-18, Index of Evid., Ex. 16, State Court Decision at 35-36.

*Saylor II*, Filing 28 (2018 WL 1732178, at *1).

In April 2010, Saylor had his last meeting with Dr. Christensen because his contract with the prison was ending in May 2010. In addition, Saylor had monthly Mental Status Reviews with Cathy Moss, a Licensed Mental Health Practitioner. She informed Saylor that Dr. Kamal was the only psychiatrist available to work with him at NSP. In May 2010, Saylor stated that he would not work with Dr. Kamal because Dr. Kohl had removed Dr. Kamal as Saylor's psychiatrist five years ago. Thus, Saylor agreed to forgo psychiatric care but wanted to continue taking his medications. A multidisciplinary hearing was held in 2010 to discuss the next step for Saylor because Dr. Christensen's contract ended and Saylor refused to work with Dr. Kamal. Defendants Dr. Weilage, Dr. Perez, and Dr. Kamal participated in the meeting, along

with others not named in the lawsuit. The group suggested that Saylor could be transferred to Tecumseh State Correctional Institution (TSCI) because Dr. Baker, a psychiatrist providing care at TSCI, could work with Saylor. It is normal procedure for a correctional facility to transfer inmates who need mental health care beyond the resources available in their facility to a facility where such care is available. Warden Bakewell made the final decision, and Saylor was transferred to TSCI in September 2010. Saylor claims that the transfer was unnecessary, retaliatory, and caused his PTSD to worsen.

Saylor was initially classified as an inmate in Protective Custody but was placed in the TSCI hospital upon arrival because he attempted to hang himself before he was transferred. While in the hospital he met with Dr. Baker. Dr. Baker wanted to gradually take Saylor off Seroquel, one of his medicines. He agreed and decided to continue taking Xanax. Throughout his time at TSCI, Saylor saw Dr. Baker every couple of months and was subjected to monthly Mental Status Reviews, but he often refused to participate. After a week in the hospital, Saylor was placed in the Special Management Unit (SMU) for refusing to move to Protective Custody. SMU is the only facility with single cells, and Saylor specifically asked for his own cell because of his PTSD and fear of roommates. In early October 2010, he was moved to Protective Custody, which houses two inmates per cell. In late October 2010, he was placed on immediate segregation again and housed in SMU because he feared for his safety. Thereafter, in the normal course, Saylor's classification was reviewed every four months per policy and procedure, and he was allowed to attend each hearing. As a result of these reviews, TSCI concluded that Saylor could be released into Protective Custody, but he rejected that proposal each time due to his fear of roommates. Therefore, Saylor remained in SMU for the duration of his time at TSCI.

*Saylor I*, Filing 190 (812 F.3d at 641-42).

In 2012, Saylor filed an action in federal district court. *See Saylor I*, No. 4:12-CV-3115 (D. Neb.). His action in federal court was centered on the allegation that the defendants reverted to providing him the type of inadequate medical care he had received prior to November 2005 subsequent to the state court decision. *Id.*, Filing No. 113, Second Amended Complaint at 15. He asserted violations of his First, Eighth,

and Fourteenth Amendment rights under 42 U.S.C. § 1983, contending, inter alia, that the Department of Corrections' failure to continue the treatment plan approved in his state tort action amounted to deliberate indifference to serious medical needs. *Id.* at 26-27. He also asserted a state law claim for negligence. *Id.* at 27-28; *see also id.*, Filing No. 124, Memorandum and Order at 1-5; *Saylor v. Nebraska*, No. 4:12cv3115, 2013 WL 6036630, *2-3 (D. Neb. Nov. 13, 2013) (summarizing the plaintiff's allegations in *Saylor I*).

In that action, defendants Nebraska Department of Correctional Services, State of Nebraska, Natalie Baker, M.D., Dennis Bakewell, Fred Britten, Robert Houston, Mohammad Kamal, M.D., Randy Kohl, M.D., Mark Weilage, Ph.D., and Cameron White, Ph.D. (hereinafter, "the state defendants") moved to dismiss the plaintiff's negligence claim on the ground of sovereign immunity. *Saylor I*, No. 4:12cv3115, Filing No. 116. The court granted the motion, finding that the State of Nebraska had not waived its sovereign immunity to suits for negligence in federal court through the State Tort Claims Act, Neb. Rev. Stat. § 81-8,209. *Id.*, Filing No. 124, Memorandum and Order at 6; *Saylor I*, No. 4:12cv3115, 2013 WL 6036630 at *4. The court found the Nebraska courts have exclusive jurisdiction over all tort claims against the State of Nebraska, its agencies, or its employees. *Id.* at 7; 2013 WL 6036630 at *4. The court also found Saylor's § 1983 claims for damages against the individual defendants in their official capacities were barred by sovereign immunity. *Id.* at 10. The court denied the defendants' motions to dismiss the § 1983 claims against the individual defendants in their individual capacities and claims for equitable relief. *Id.* at 12.

The court later denied the state defendants' motion for summary judgment based on qualified immunity. *Saylor I,* No. 4:12CV3115, Filing No. 178, Memorandum and Order at 22-27; *Saylor I*, No. 4:12CV3115, 2014 WL 7335742 at *11-*13 (D. Neb. Dec. 22, 2014). Following an interlocutory appeal, the Eighth Circuit reversed. *See Saylor I,* 812 F.3d at 642. The Eighth Circuit found no deprivation of Saylor's First, Fourteenth, or Eighth Amendment rights and remanded the action "with directions to dismiss [the state defendants] and for the entry of any further necessary orders concerning the non-appealing parties" consistent with its ruling. *Id.* at 647.

*Saylor II*, Filing 28 (2018 WL 1732178, at *1-*2) (footnote omitted). More specifically, the Eighth Circuit made the following determinations:

> Saylor provides no specific evidence to show that any of the nonmedical defendants were involved in, or directly responsible for, his allegedly insufficient medical care. These defendants did not even participate in the multidisciplinary meeting regarding Saylor's transfer. Thus, … they cannot be held liable for cruel and unusual punishment in violation of the Eighth Amendment….

> As for the named medical defendants, Dr. Kohl, Dr. White, Dr. Weilage, and Dr. Perez, none were treating physicians. Thus, these defendants also acted in a supervisory capacity.… Saylor's main argument is that the treatment that occurred after Dr. Christensen left NSP rises to the level of cruel and unusual punishment. Dr. Christensen's treatment plan was three-part: regular psychotherapy treatment, medication, and a safe environment. The medical defendants attempted to provide Saylor with another psychiatrist at NSP, ultimately found him another psychiatrist at TSCI, continued medication as they saw fit within their independent medical judgment, and gave him his requested private cell. To the extent there was any change in Dr. Christensen's treatment plan, Saylor requested some and agreed to other deviations. Specifically, Saylor stated he was willing to forgo seeing a doctor so long as he could continue taking his medications. After the meeting with Dr. Baker wherein she suggested easing him off Seroquel because it did not seem to be helping and was causing low blood pressure, Saylor agreed to continue taking Xanax.

> Throughout his time of incarceration, the record shows that Defendants met Saylor's medical needs beyond the minimum standard required. Defendants were aware of his medical needs and took steps to meet those needs. Because Saylor cannot show that Defendants acted with deliberate indifference, there was no deprivation of his Eighth Amendment rights, and thus, Defendants are entitled to qualified immunity.

> * * *

> Defendants violated no constitutional right by assigning Saylor to another psychiatrist when Dr. Christensen's contract with NDCS ended

7

or by changing Saylor's medication at the direction of a doctor.… [T]he clearly stated, nonretaliatory reason for the transfer [to TSCI] was to provide Saylor with necessary psychiatric care. He refused to see Dr. Kamal at NSP, and Dr. Baker was available to work with Saylor at TSCI. Finally, Saylor was kept in Administrative Segregation, specifically SMU, because he requested his own cell due to his PTSD. This is the only area with single prisoner cells. Although he was cleared to be released into Protective Custody, he would have had to share a cell with a roommate, which he refused to do. It is blatantly contradictory to request a private cell with no roommates and then complain about isolation. Because none of Saylor's activities were protected and none of Defendants' actions were retaliatory, Saylor has no First Amendment claim.

* * *

Saylor was transferred to a comparable prison for the sole purpose of obtaining psychiatric care. This does not violate the Due Process Clause of the Fourteenth Amendment, and neither does Saylor's confinement in SMU …. Segregation due to a prisoner's request to be kept in a single prisoner cell because of PTSD is not an atypical or a significant hardship. Rather, TSCI made special accommodations for Saylor. Accordingly, there has been no constitutional violation, and thus, Saylor has no cognizable Fourteenth Amendment claim. Defendants are entitled to qualified immunity on these two issues.

*Saylor v. Nebraska*, 812 F.3d 637, 646-47 (8th Cir. 2016), *as amended* (Mar. 4, 2016) (footnote omitted).

On remand, this court dismissed the plaintiff's claims against the state defendants, dismissed the plaintiff's constitutional claims against the non-appealing parties (defendants Natalie Baker, M.D., and Correct Care Solutions) and declined to exercise supplemental jurisdiction over the plaintiff's state law negligence claim. *Saylor I,* No. 4:12CV3115, Filing No. 222, Memorandum and Order at 5-9; *Saylor v. Kohl*, 2016 WL 8201925, at *3-*5 (D. Neb. Nov. 28, 2016).

Saylor later filed a motion [to reconsider] under Federal Rules of Civil Procedure 59 and 60 to vacate the court's order dismissing the action, reopen the case, and grant leave to file a third amended complaint. *Id.,* Filing No. 225. The attached proposed third amended complaint

restated the plaintiff's earlier claims, added some factual allegations, and asserted a claim for violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq. Id.*, Filing No. 225-1, proposed third amended complaint. The court denied the motion, finding plaintiff had not met the standards for relief under Federal Rules of Civil Procedure 59(e) and 60(b). *Id.*, Filing No. 230, Memorandum and Order; *Saylor I*, 2017 WL 486921, *1 (D. Neb. Feb. 6, 2017). Neither this court nor the Eighth Circuit ever addressed the merits of Saylor's negligence claim.

*Saylor II*, Filing 28 (2018 WL 1732178, at *2).

In denying Saylor's motion to reconsider in *Saylor I*, this court specifically addressed his post-judgment request for leave to amend, stating:

> [Saylor] asks this Court to allow him to file a third amended complaint and add an entirely new claim for a violation of the American[s] with Disabilities Act allegedly because he has post-traumatic stress syndrome. The Court agrees with the defendant[s] that this will not be allowed. First, [Saylor] has made no showing that he has met the standards of Fed. R. Civ. P. 59(e) (motion to alter or amend a judgment) and 60(b) (grounds for relief from order). Next, [Saylor] already amended his complaint in this case. At no point during this time did [Saylor] ever ask to include an American[s with] Disabilities Act Claim in his case. Motions to reopen a case after dismissal in order to allow amendments to the complaint are "disfavored." *U.S. ex rel. Roop v. Hypoguard USA, Inc.*, 559 F.3d 818, 824 (8th Cir. 2009). Further, Rule 59(e) motions "serve the limited function of correcting manifest errors of law or fact or to present newly discovered evidence." *U.S. v. Metropolitan St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006) (internal quotation omitted). [Saylor] has not alleged that the Court committed any errors of law or fact. Nor has he contended that he has new evidence for this claim. In fact, it appears that this cause of action has existed throughout the case. The Court finds no good reason to permit [Saylor] to amend his complaint.

*Saylor I*, Filing 230 (2017 WL 486921, at *1) (footnote omitted).

A few months later, on May 30, 2017, Saylor commenced another state-court action, filing a complaint which was "substantially similar, if not identical, to the

proposed third amended complaint submitted in [federal district court in *Saylor I*]."
*Saylor II*, Filing 28 (2018 WL 1732178 at *2). Saylor obtained service of process on
the State of Nebraska and NDCS in late November 2017, but all other defendants
were dismissed from the action by operation of law for non-service. *See Saylor II*,
Filing 1-1 at 41-51. The State and NDCS filed a notice of removal to this court,
basing removal on federal question jurisdiction. Following removal, the defendants
filed a Rule 12(b)(6) motion to dismiss in which they contended the complaint was
barred by res judicata. A Rule 11 motion for sanctions was also filed. In response to
these motions, Saylor filed an amended complaint in which he "recited essentially
the same factual background, but asserted only a state law negligence claim," and he
simultaneously moved to remand the action to state court. *Saylor II*, Filing 28 (2018
WL 1732178 at *2-*3).

The defendants' motion to dismiss was denied, and Saylor's motion to remand
was granted. This court explained:

> The federal claims have now been abandoned and only [Saylor's] state
> law negligence claim is at issue. In *Saylor I*, this court ultimately
> declined to exercise its supplemental jurisdiction over Saylor's state
> law negligence claim. That claim remains at issue in the present case.
> Once again, in its discretion, the court will decline to exercise
> supplemental jurisdiction over [Saylor's] state law negligence claim.
> Contrary to the defendants' contention, the courts' findings on
> [Saylor's] constitutional claims in *Saylor I* does not preclude
> consideration of [Saylor's] negligence claim. The issue presented in
> [Saylor's] amended complaint is whether the defendants continued to
> provide [Saylor] with treatment that met the applicable community
> standard of care from and after March 31, 2010. Essentially, Saylor
> presents the same challenge to the defendants' conduct that he
> presented in his earlier state court action in 2010, but the allegations
> relate to a different time-frame. Principles of economy, convenience,
> fairness, and comity dictate that state court is a superior forum for
> [Saylor's] claim. The claim is a state law claim and the state courts have
> as much or more familiarity with [Saylor's] claim as this court has.

*Id.* (2018 WL 1732178, at *5). The defendants' motion for sanctions was also
denied, with this court stating:

10

Although [Saylor] arguably violated Rule 11 by including the civil rights claims in his original complaint, the defendants have not shown the pleading was interposed for an improper purpose in that the pleading was timely amended to abandon the claims. The amended complaint contains a legally tenable claim. [Saylor's] counsel's reliance on a "form pleading" apparently cut and pasted from an earlier complaint is condoned, but the court does not consider the plaintiff's claims to be so baseless as to warrant Rule 11 sanctions. Notably, within a short time after the action was removed [Saylor] filed an amended complaint, removing the objectionable claims. He essentially concedes his civil rights claims are precluded.

*Id.* (2018 WL 1732178, at *5).[1]

## IV. ANALYSIS

A district court may properly grant a motion to dismiss based on the affirmative defense of res judicata when the defense "is apparent on the face of the complaint." *Midwest Disability Initiative v. JANS Enterprises, Inc.*, 929 F.3d 603,

---

[1] After the action was remanded to the state district court, the State and DCS moved to dismiss the "[operative] Amended Complaint" pursuant to Neb. Ct. R. Pldg. § 6-1112(b)(1) and (6), on the ground the tort claims were time barred under the STCA. Saylor requested and was granted leave to amend his original 2017 complaint to make it "identical" to the amended complaint that had been remanded by the federal court, and no party objected to this procedure. Thereafter, the parties agreed that the motion to dismiss could be converted into a motion for summary judgment and that it should be treated as relating to Saylor's amended complaint.

* * *

The district court … dismissed Saylor's amended complaint with prejudice, finding it was time barred under the STCA.

*Saylor v. State*, 936 N.W.2d 924, 928–29 (Neb. 2020). The Nebraska Supreme Court affirmed the dismissal on January 10, 2020. *Id*., at 930. The present action was filed six months later.

607 (8th Cir. 2019) (quoting *C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 764 (8th Cir. 2012)). "Under the doctrine of claim preclusion, a final judgment forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." *Daredevil, Inc. v. ZTE Corp*., 1 F.4th 622, 627-28 (8th Cir. 2021) (internal quotations and citations omitted).

To establish that claim preclusion applies under federal common law,[2] a party must show that "(1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involve the same parties (or those in privity with them); and (4) both suits are based upon the same claims or causes of action." *In re Buchanan*, 31 F.4th 1091, 1095-96 (8th Cir. 2022) (quoting *Yankton Sioux Tribe v. U.S. Dep't of Health & Hum. Servs.*, 533 F.3d 634, 639 (8th Cir. 2008)).

Defendants contend each of these elements is satisfied with respect to both *Saylor I* and *Saylor II*. Saylor concedes that the second and third elements are satisfied. See Filing 91 at 7. However, Saylor denies there was a final judgment on the merits regarding his ADA claims in *Saylor I* and *II*, and he argues there are changed circumstances which differentiate the claims. See *ibid*. at 9.

### a. Final Judgment on the Merits

A decision on the merits is one that signifies the "death knell" of the litigation, *i.e.*, one that permanently forecloses a party from further advancing a claim or defense. *Mitchell v. Chapman*, 343 F.3d 811, 821 (6th Cir. 2003). Indeed, since a decision may address the merits but still not have that effect, the Supreme Court has suggested that the "on the merits" language in the classic formulation of claim preclusion is misleading. *Arangure v. Whitaker*, 911 F.3d 333, 346-47 (6th Cir. 2018) (citing *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 501-03

---

[2] "The Full Faith and Credit Clause, U.S. Const. Art. IV, § 1, and the full faith and credit statute, 28 U.S.C. § 1738, govern the *res judicata* effects to be given *state* court judgments. But 'no federal textual provision addresses the claim-preclusive effect of a federal-court judgment in a federal-question case,' so that is an issue of federal common law." *In re Finstad*, 4 F.4th 693, 696 (8th Cir. 2021) (quoting *Semtek Int'l, Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 507 (2001)).

(2001)). For the purpose of claim preclusion, a final judgment on the merits "is one that actually pass[es] directly on the substance of [a particular] claim before the court," *Semtek*, 531 U.S. at 501-02 (alteration in original) (internal quotation marks omitted). The phrase "final judgment on the merits" is often used interchangeably with "dismissal with prejudice." *Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002). However, the "with prejudice" label is not always conclusive for the purpose of res judicata and, indeed, does not equate to an adjudication on the merits when the dismissal is for lack of jurisdiction. *Ruiz v. Snohomish Cnty. Pub. Util. Dist. No. 1*, 824 F.3d 1161, 1168 (9th Cir. 2016). *See, e.g.*, *Kulinski v. Medtronic Bio-Medicus, Inc.*, 112 F.3d 368, 373 (8th Cir. 1997) (district court's dismissal "with prejudice" did not operate as adjudication on the merits, so as to preclude subsequent actions under doctrine of res judicata, where dismissal for lack of jurisdiction did not reach the merits). On the other hand, a dismissal "without prejudice" generally means "a dismissal without barring the plaintiff from returning later, to the same court, with the same underlying claim." *Semtek*, 531 U.S., at 505. Such a judgment does not "permanently foreclose[ ]" a litigant from trying again, so it is not sufficiently "final" to be given res judicata effect. *Arangure*, 922 F.3d at 347 (quoting *Mitchell*, 343 F.3d, at 821).

### 1. *Saylor I*

This court entered a final judgment on the merits in *Saylor I* on November 28, 2016, when Judge Bataillon dismissed Saylor's § 1983 claims. Although the order (Filing 222) and separate judgment (Filing 223) do not specify whether the dismissal was with or without prejudice, the Eight Circuit made a determination on the merits that defendants Kohl, Bakewell, Houston, White, Weilage, Britten, and Perez had not violated Saylor's constitutional rights, and Judge Bataillon made a similar determination regarding defendants Baker and Correct Care Solutions. All claims over which the court had original jurisdiction clearly were intended to be, and in effect were, dismissed with prejudice upon the granting of the defendants' motion for summary judgment.[3] *See* Fed. R. Civ. P. 41(b) ("Unless the dismissal order states

---

[3] By contrast, Judge Bataillon's dismissal of Saylor's state-law negligence claims under 28 U.S.C. § 1367(c)(3) was necessarily "without prejudice." *See Nagel v. City of Jamestown*, 952 F.3d 923, 935 (8th Cir. 2020) ("Such a dismissal is without prejudice and is reviewed for abuse of discretion.").

otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits.").

On December 27, 2016, Saylor filed a motion requesting "the Court pursuant … Fed. R. Civ. P. 60(b) or Fed. R. Civ. P. 59(e) to vacate the Court's November 28, 2016, Memorandum and Order (Filing No. 222), and Its November 28, 2016, Judgment (Filing No. 223), to instruct the Clerk to re-open the case and to grant the Plaintiff leave, under Fed. R. Civ. P. 15(a)(2) to file his [proposed] Third Amended Complaint …." *Saylor I*, Filing 225. This motion was denied in all respects on February 6, 2017. *Saylor I*, Filing 230, 2017 WL 486921. No appeal was taken.

Frakes contends the denial of Saylor's request for leave to amend was a final judgment on the merits of the proposed ADA claim. For supporting authority, he cites *Professional Management Associates, Inc. v. KPMG LLP*, 345 F.3d 1030, 1032 (8th Cir. 2003), in which the Eighth Circuit reversed the district court's denial of a defendant's Rule 11(b) motion for sanctions "where a plaintiff attempted to re-litigate the same claims involving the same parties as a previous action" and "even admitted that the complaint in the second suit was simply a copy of a proposed amended complaint in the first suit, which had been denied." *C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 767 (8th Cir. 2012). The Court of Appeals held that the district court abused its discretion in refusing to sanction the plaintiff ("PMA") because the second lawsuit was barred by res judicata. It explained:

> Under res judicata, a judgment on the merits in an earlier lawsuit bars a second suit involving the same parties based on the same cause of action. *Landscape Props., Inc. v. Whisenhunt,* 127 F.3d 678, 682 (8th Cir. 1997). PMA admits the complaint in *PMA I* involved the same claims and the same parties as this action, and "the complaint in this action is the same as the proposed complaint that [PMA] filed in connection with the motion for leave to amend" in *PMA I,* which the district court denied. Because the same parties and claims are involved in both cases, we need only decide whether the denial of the motion to amend was a judgment on the merits. We conclude that it was.

> The denial of a motion to amend a complaint in one action is a final judgment on the merits barring the same complaint in a later action.

14

> *Landscape Props.,* 127 F.3d at 683. "[D]enial of leave to amend constitutes res judicata on the merits of the claims which were the subject of the proposed amended pleading." *King v. Hoover Group, Inc.,* 958 F.2d 219, 222-23 (8th Cir.1992). This is so even when denial of leave to amend is based on reasons other than the merits, such as timeliness. *Northern Assurance Co. v. Square D Co.,* 201 F.3d 84, 88 (2d Cir. 2000); *Poe v. John Deere Co.,* 695 F.2d 1103, 1107 (8th Cir. 1982). Thus, the fact that the district court denied leave to amend because of PMA's noncompliance with procedural rules is irrelevant. The denial is a judgment on the merits of the claims in the proposed amended pleading. Thus, the denial of leave to amend in *PMA I* bars the filing of the same pleading in this lawsuit.

*Pro. Mgmt. Assocs.*, 345 F.3d at 1032-33 (citation to record omitted); *see also Carter v. Money Tree Co.*, 532 F.2d 113, 115 (8th Cir. 1976) ("If, upon dismissal of the complaint, the plaintiff seeks leave to file an amended complaint and such leave is denied with prejudice, the denial is res judicata as to any claim made by plaintiff in that amended complaint.").

Saylor argues his situation is distinguishable because "this Court had already rendered a final judgment on the merits of his claims in *Saylor I* before his motion to reconsider [and request for leave to amend] was filed." Filing 91 at 8. This is not a valid distinction, though, because the finality of this court's November 28, 2016 judgment was automatically suspended on December 27, 2016,[4] when Saylor filed his motion to reconsider, and was restored on February 6, 2017, when the motion was denied. *See Banister v. Davis*, 140 S. Ct. 1698, 1703 (2020) ("The filing of a Rule 59(e) motion within the 28-day period 'suspends the finality of the original judgment' for purposes of an appeal…. Only the disposition of that motion 'restores th[e] finality' of the original judgment, thus starting the 30-day appeal clock…. And if an appeal follows, the ruling on the Rule 59(e) motion merges with the prior determination, so that the reviewing court takes up only one judgment.") (quoting *FCC v. League of Women Voters of Cal.*, 468 U.S. 364, 373, n. 10 (1984)). Saylor's additional citation of Rule 60(b) in his motion to reconsider does not alter this result. *See id.*, 140 S. Ct. at 1709-10, n. 9 ("[C]ourts of appeals have long treated Rule 60(b)

---

[4] Twenty-eight calendar days after November 28, 2016, was December 26, 2016, a legal holiday. Thus, the motion was timely. *See* Fed. R. Civ. P. 6(a)(1).

motions filed within 28 days as … Rule 59(e) motions."); *see also* Fed. Rule App. Proc. 4(a)(4)(A)(vi) (codifying that approach by setting the same appeals clock for self-styled Rule 60(b) motions filed within 28 days as for Rule 59(e) motions).[5]

Straightforward application of the rules stated in *Professional Management* requires a finding that there was a final judgment on the merits of all federal claims alleged in Saylor's proposed third amended complaint in *Saylor I*, regardless of whether those claims were required to be brought in that action. *See, e.g.*, *Olson v. Brott*, No. CIV. 09-790 JNE/JJG, 2009 WL 4912135, at *2 n. 1 (D. Minn. Dec. 11, 2009) ("Eighth Circuit precedent regarding the preclusive effect of the denial of a motion to amend a complaint compels dismissal."). As explained by the *Olson* court:

> Plaintiff argues that the claims in *Olson I* do not share a common nucleus of operative facts with the claims in this case. *See Poe v. John Deere Co.,* 695 F.2d 1103, 1106 (8th Cir.1982) (adopting common-nucleus-of-operative-facts test to determine whether claims are the same). Plaintiff's argument is undercut by the Eighth Circuit's repeated admonition that "denial of leave to amend constitutes res judicata on the merits of the claims which were the subject of the proposed amended pleading." *King v. Hoover Group, Inc.,* 958 F.2d 219, 222–23 (8th Cir.1992); *see also Prof'l Mgmt.,* 345 F.3d at 1032; *Landscape Props.,* 127 F.3d at 683. Thus, the Court looks to the proposed amended complaint in the earlier action to determine whether the later action asserts the same claims. *See Landscape Props.,* 127 F.3d at 682-83. *But see Daley* [*v. Marriott International, Inc.,* 415 F.3d 889, 896 (8th Cir. 2005)] (relying on claims in original complaint in earlier action); *Crystal Import* [*Corp. v. AVID Identification Sys., Inc.,* 582 F.Supp.2d 1166, 1170-71 (D.Minn. 2008)] (same). The procedural due process claims in this case are nearly identical to the claims in Plaintiff's proposed amended complaint in *Olson I.* Therefore, the claims are the same for purposes of res judicata, and Plaintiff is precluded from

---

[5] A Rule 60(b) motion filed outside the 28-day period "does not affect the time to appeal the judgment but is treated as initiating a new proceeding whose decision is independently final and appealable." *York Grp., Inc. v. Wuxi Taihu Tractor Co.*, 632 F.3d 399, 401 (7th Cir. 2011) (citing *Browder v. Director, Department of Corrections,* 434 U.S. 257, 263 n. 7 (1978)).

maintaining this action. Accordingly, the Court grants Defendants'
motion to dismiss.

*Id.*, 2009 WL 4912135, at *4 (footnote omitted).

Although the *Olson* court dismissed the second lawsuit, it denied the
defendants' motion for sanctions, concluding that the plaintiff had "made a
nonfrivolous argument for the modification or reversal of existing law." *Id.*, 2009
WL 4912135, at *8. The court noted that *Professional Management*'s "bright-line
rule, which grants sweeping preclusive effect to an ostensibly nondispositive pretrial
motion, appears not to have been consistently applied in the Eighth Circuit." *Id.*, at
*5 (discussing *Daley*, *Lundquist v. Rice Memorial Hospital*, 283 F.3d 975, 976 (8th
Cir. 2001), and *Kulinski v. Medtronic Bio-Medicus, Inc.*, 112 F.3d 368, 370 (8th Cir.
1997)). "In addition to this seemingly inconsistent approach to the preclusive effect
of the denial of a motion to amend," the *Olson* court stated, "no other circuit has
expressly adopted the Eighth Circuit's approach and it has been distinguished by the
Second Circuit." *Id.*, at *6 (citing *Curtis v. Citibank, N.A.*, 226 F.3d 133, 139 (2d
Cir. 2000)). "In the Second Circuit, the denial of a motion to amend a complaint in
an earlier action is considered irrelevant to the res judicata inquiry in a later action
unless that dismissal was on the merits of the proposed amended complaint." *Id.*
(citing *See Curtis*, 226 F.3d at 139 ("[D]enial of a motion to amend will not
inevitably preclude subsequent litigation of those claims set out in a proposed new
complaint. Only denial of leave to amend *on the merits* precludes subsequent
litigation of the claims in the proposed amended complaint." (emphasis in original)).

In summary, Eighth Circuit precedent requires a determination that the denial
of Saylor's post-judgment motion to file a third amended complaint in *Saylor I* was
a final judgment on the merits, and the issue then becomes whether the claims
alleged in the present action were also alleged in the proposed third amended
complaint. Even without regard to the court's denial of that motion, however, the
claims will also be precluded if, under general res judicata principles, they should
have been joined with the § 1983 claims that were dismissed in *Saylor I* when the
court granted the defendants' motion for summary judgment. As will be discussed
subsequently, the court concludes that Saylor's ADA and RA claims are precluded
under either approach.

## 2. *Saylor II*

There is no merit to Frakes' further contention that there was a "final judgment on the merits" in *Saylor II* which must be given res judicata effect. All federal claims alleged in the original complaint in *Saylor II* were automatically withdrawn from consideration when Saylor filed an amended complaint within 21 days after the defendants filed a Rule 12(b)(6) motion to dismiss.[6] *See* Fed. R. Civ. P. 15(a)(1)(B) (authorizing amendment as a matter of course).[7] It is axiomatic that prejudice does not attach to a claim that is properly dropped from a complaint under Rule 15(a) prior to final judgment. *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 403 F.3d 683, 690 (9th Cir. 2005). Frakes does not contend that the subsequent dismissal of the case following its remand to state court has a res judicata effect here.

## B. Same Claims

"The final element of res judicata is whether both suits are based on the same claims or causes of action: a claim is barred by res judicata if it arises out of the same nucleus of operative facts as the prior claim." *Midwest Disability Initiative v. JANS Enterprises, Inc.*, 929 F.3d 603, 609-10 (8th Cir. 2019) (internal quotation marks and citation omitted). Saylor argues that the ADA and RA claims alleged in the present case "arose after *Saylor I* and *Saylor II* were filed" and "are based in part on

---

[6] Frakes states in his reply brief that Saylor "appears to be correct" in arguing that "he voluntarily amended-out his ADA claims in *Saylor II*—thus, depriving the Court of the opportunity to rule on the defendant's motion to dismiss based on res judicata grounds," and that *Saylor II* "was never subjected to a final judgment on the merits, and therefore can have no preclusive effect in this case." Filing 104 at 7.

[7] Saylor argues that his filing of an amended complaint in *Saylor II* "amounted to a voluntary dismissal of [the original complaint's ADA] claim under Fed. R. Civ. P. 41(a)(1), which, under Fed. R. Civ. P. 41(b) is without prejudice and not an adjudication on the merits." Filing 91 at 8. This argument is legally and factually erroneous because, first of all, Rule 41(b) only applies to *involuntary* dismissals and, secondly, Saylor did not file a notice of dismissal under Rule 41(a)(1); instead, he filed an amended complaint under Rule 15(a)(1)(B). Indeed, the prevailing view is that "Rule 41(a) does not provide for the voluntary dismissal of less than all claims against any defendant." *Environmental Dynamics, Inc. v. Robert Tyer and Associates, Inc.,* 929 F.Supp. 1212, 1225 (N.D. Iowa 1996) (analyzing cases).

events which occurred after those cases were filed" and "in part on changed circumstances which show an exacerbation of harm from prior events to a degree which was not previously apparent." (Filing 91 at 9.)

The Court of Appeals has "never recognized a general 'exception' to the *res judicata* bar based on 'changed circumstances.'" *United States v. Bala*, 948 F.3d 948, 951 (8th Cir. 2020). This circuit does, however, "follow the general rule 'that claim preclusion does not apply to claims that did not arise until *after* the first suit was filed.'" *Id.* (quoting *Baker Grp. v. Burlington N. & Santa Fe Ry.*, 228 F.3d 883, 886 (8th Cir. 2000) (emphasis in original)). "The pertinent question is whether the second claim is based on subsequent legal or factual events that produce a different nucleus of operative facts, not whether those events inspire new legal theories of recovery or provide additional evidence supporting the previously rejected claim." *Id.* (citing *Lane v. Peterson*, 899 F.2d 737, 742-44 (8th Cir. 1990)).

The ADA claim alleged in the second amended complaint in the present action (Filing 51) arises out of the same nucleus of operative facts as the ADA claim alleged in the proposed third amended complaint in *Saylor I*. Saylor again challenges his conditions of confinement. *See Saylor I*, No. 4:12CV3115, Filing No. 225-1, Third Am. Compl. (hereinafter cited as "*Saylor I*, Third Am. Compl."); (Filing No. 51, Verified Am. Compl.). Specifically, he re-alleges that he is medically required to have his own cell as a result of his PTSD diagnosis, *Saylor I*, Third Am. Compl. at ¶ 87-88; (Filing No. 51, Verified Am. Compl. at ¶ 26, 32–33, 35, 37, 42, 59-60, 65, 72, 133a); that because of his need for a single cell, he has been discriminatorily housed in "solitary confinement" and denied a reasonable accommodation for years, *Saylor I*, Third Am. Compl. at ¶ 87–88; (Filing No. 51, Verified Am. Compl. at ¶ 23–24, 33, 35-37, 44, 44a, 59–60, 62, 67-69, 96, 103, 105, 112, 118); that, as a consequence of having his own cell in solitary confinement, his PTSD is not improving, *Saylor I*, Third Am. Compl. at ¶ 87-88; (Filing No. 51, Verified Am. Compl. at ¶ 39, 41–42, 44c, 61, 113, 127, 130); and that because he is housed in "solitary confinement," he is being "excluded from many services, programs, and activities, available to other inmates, and activities, available to other inmates . . . ." *Saylor I*, Third Am. Compl. at ¶ 87–88. All these allegations are broadly attributed to the actions of the State, State employees, or not attributed to any actor at all. *See Saylor I*, Third Am. Compl.; (Filing No. 51, Verified Am. Compl.).

Saylor alleges no new injuries resulting from these conditions. In both *Saylor I* and the present action, Saylor claims that he was deprived of commonly enjoyed services, to varying degrees, due to his PTSD and confinement, *Saylor I*, Third Am. Compl. at ¶ 89, 91–93; (Filing No. 51, Verified Am. Compl. at ¶ 38, 76–80, 83e, 104, 108, 128, 133, 134). This includes:

- A "normal" or "standard" bed, *Saylor I*, Third Am. Compl. at ¶ 93c; (Filing No. 51, Verified Am. Compl. at ¶ 133m);

- Access to personal property, *Saylor I*, Third Am. Compl. at ¶ 47, 93p; (Filing No. 51, Verified Am. Compl. at ¶ 133z4);

- Clothing options, *Saylor I*, Third Am. Compl. at ¶ 93e, 93*l*; (Filing No. 51, Verified Am. Compl. at ¶ 133z5, 136.3);

- Community, *Saylor I*, Third Am. Compl. at ¶ 91-92, 93w; (Filing No. 51, Verified Am. Compl. at ¶ 133i);

- Daily shower access, *Saylor I*, Third Am. Compl. at ¶ 93k; (Filing No. 51, Verified Am. Compl. at ¶ 133x);

- Desired housing, *Saylor I*, Third Am. Compl. at ¶ 93b; (Filing No. 51, Verified Am. Compl. at ¶ 133a, 133j–133k);

- Desired medical treatment, *Saylor I*, Third Am. Compl. at ¶ 91–92, 93a, 93e; (Filing No. 51, Verified Am. Compl. at ¶ 133b–h);

- Drug programs, *Saylor I*, Third Am. Compl. at ¶ 91–92, 93v; (Filing No. 51, Verified Am. Compl. at ¶ 133z9).

- Educational programs, *Saylor I*, Third Am. Compl. at ¶ 91–92, 93u; (Filing No. 51, Verified Am. Compl. at ¶ 133*l*, 133z8); and

- Freedom of movement, *Saylor I*, Third Am. Compl. at ¶ 47; (Filing No. 51, Verified Am. Compl. at ¶ 133n);

- Full canteen access, *Saylor I*, Third Am. Compl. at ¶ 91–92, 93q; (Filing No. 51, Verified Am. Compl. at ¶ 133z6);

- Hot water and ice, *Saylor I*, Third Am. Compl. at ¶ 93i; (Filing No. 51, Verified Am. Compl. at ¶ 133p);

- Jobs and work release, *Saylor I*, Third Am. Compl. at ¶ 93f, 93r; (Filing No. 51, Verified Am. Compl. at ¶ 133z7);

- Law library access, *Saylor I*, Third Am. Compl. at ¶ 91–92, 93g; (Filing No. 51, Verified Am. Compl. at ¶ 133s);

20

- Library access, *Saylor I*, Third Am. Compl. at ¶¶ 91–92, 93t; (Filing No. 51, Verified Am. Compl. at ¶ 133t);

- Meal quality, *Saylor I*, Third Am. Compl. at ¶ 93i, 93w; (Filing No. 51, Verified Am. Compl. at ¶ 133o);

- Outdoor recreation, *Saylor I*, Third Am. Compl. at ¶¶ 91–92, 93o; (Filing No. 51, Verified Am. Compl. at ¶ 133z3);

- Phone calls, *Saylor I*, Third Am. Compl. at ¶¶ 91–92, 93m; (Filing No. 51, Verified Am. Compl. at ¶ 133v);

- Pop, *Saylor I*, Third Am. Compl. at ¶ 93j; (Filing No. 51, Verified Am. Compl. at ¶ 133r);

- Programs and activities, *Saylor I*, Third Am. Compl. at ¶¶ 91–92; (Filing No. 51, Verified Am. Compl. at ¶ 133z);

- Television, *Saylor I*, Third Am. Compl. at ¶¶ 91–92, 93p; (Filing No. 51, Verified Am. Compl. at ¶ 133y);

- Visits, *Saylor I*, Third Am. Compl. at ¶¶ 47, 91–92, 93n; (Filing No. 51, Verified Am. Compl. at ¶ 133u);

- Writing materials and tables, *Saylor I*, Third Am. Compl. at ¶¶ 91–92, 93c, 93h; (Filing No. 51, Verified Am. Compl. at ¶ 133z1-z2);

Saylor's only new grievances relate to having greater access to emails and microwaves. (Filing No. 51, Verified Am. Compl. at ¶ 133q, 133w). However, this does not constitute a new claim because it arises from the same alleged conditions regarding the above "discriminations." Moreover, the crux of Saylor's requested relief in not new; he again asks for a cell of his own. *Saylor I*, Third Am. Compl. at ¶ 94; (Filing No. 51, Verified Am. Compl. at ¶¶ 72, 75, 117, 119, 144, A.1-A.3). The reappearance of Saylor's previously alleged injuries and same prayer for relief likewise indicates that the present action is identical to the claims in *Saylor I*. The only identifiable difference between the ADA claim in the second amended complaint in this case and the third amended complaint in *Saylor I* is that the present factual allegations contain subsequent developments. But these allegations concern the continuation of same conduct addressed in *Saylor I*, and even incorporate the events of *Saylor I*. They do not give rise to a new claim.

Saylor's Rehabilitation Act claim is similarly barred, as it also arises from the same nucleus of operative facts. The enforcement, remedies, and rights are the same

under both Title II and Section 504, and the prima facie case as to each statutory claim is nearly identical. *B.M. ex rel. Miller v. South Callaway R-II School Dist.*, 732 F.3d 882, 887 (8th Cir. 2013). Under Title II, a plaintiff must show that 1) he or she is a qualified individual with a disability; 2) he or she was excluded from or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the entity; and 3) that such exclusion, denial of benefits or discrimination was because of his or her disability. 42 U.S.C. § 12132; *Layton v. El-der,* 143 F.3d 469, 472 (8th Cir. 1997); *Randolph v. Rodgers,* 170 F.3d 850, 858 (8th Cir. 1999); *see also* 29 U.S.C. § 794(a) (section 504). The Rehabilitation Act contains the additional element that a plaintiff show the program or activity from which he is excluded receives federal funds. *M.P. ex rel. K. and D.P. v. Indep. School Dist. No. 721,* 439 F.3d 865, 867 (8th Cir. 2006). As such, the previous operative facts supporting Saylor's ADA claim in *Saylor I* would have subsumed any potential claim under the Rehabilitation Act.

Saylor points to *Whole Woman's Health v. Hellerstedt*, 579 U.S. 582, 136 S.Ct. 2292 (2016), for the proposition that "development of new material facts can mean that a new case and an otherwise similar previous case do not present the same claim." Filing 91 at 2 (quoting *Whole Woman's Health*, 579 U.S. at 599, 136 S.Ct. at 2305). Saylor misapprehends what constitute "new material facts" in this context.

The question in *Whole Woman's Health* was whether a post-enforcement, as-applied challenge by two medical clinics were barred by a final judgment in a previous pre-enforcement, facial challenge to a Texas state law requiring abortion providers to have certain admitting-privileges and surgical-center requirements. The Supreme Court said that "Petitioners' postenforcement as-applied challenge is not 'the very same claim' as their preenforcement facial challenge." *Whole Woman's Health*, 579 U.S. at 599, 136 S.Ct. at 2305). The Court concluded as much by looking to the Restatement (Second) of Judgments ("Restatement") for guidance. One such provision from the Restatement said, "A valid and final personal judgment for the defendant, which rests on the prematurity of the action or on the plaintiff's failure to satisfy a precondition to suit, does not bar another action by the plaintiff instituted after the claim has matured, or the precondition has been satisfied." *Id*., 579 U.S. at 600, 136 S. Ct. at 2305 (quoting Restatement § 20(2)).

Unlike the situation in *Whole Woman's Health*, where the Court was weighing a pre-enforcement, facial challenge of a statute versus a post-enforcement, as-applied challenge, there was nothing about Saylor's claim to "mature[ ]," nor was there a "precondition to suit" that prevented him from litigating his ADA claim in *Saylor I*. Here, the crux of Saylor's claim is the same as it was in *Saylor I*—namely, that he has been placed in restrictive housing because of his PTSD, and as a result has been excluded from participation in or denied the benefits of certain prison services, programs, and activities.

The Court in *Whole Woman's Health* also found persuasive Restatement § 24, Comment *f,* which said that "where 'important human values—such as the lawfulness of continuing personal disability or restraint—are at stake, even a slight change of circumstances may afford a sufficient basis for concluding that a second action may be brought." *Id.,* 579 U.S. at 600, 136 S. Ct. at 2305 (quoting Restatement § 24, Comment *f*). The court then posed a hypothetical concerning conditions of confinement at a prison:

> Imagine a group of prisoners who claim that they are being forced to drink contaminated water. These prisoners file suit against the facility where they are incarcerated. If at first their suit is dismissed because a court does not believe that the harm would be severe enough to be unconstitutional, it would make no sense to prevent the same prisoners from bringing a later suit if time and experience eventually showed that prisoners were dying from contaminated water. Such circumstances would give rise to a new claim that the prisoners' treatment violates the Constitution. Factual developments may show that constitutional harm, which seemed too remote or speculative to afford relief at the time of an earlier suit, was in fact indisputable. In our view, such changed circumstances will give rise to a new constitutional claim. This approach is sensible, and it is consistent with our precedent.

*Id.* Saylor analogizes this hypothetical to his situation, but there is no indication that his ADA claim was too remote or speculative when it was included in the proposed third amended complaint in *Saylor I*.[8]

---

[8] While Saylor inserts additional allegations complaining of inadequate treatment for his PTSD, such claims are not cognizable under the ADA or the

In *Whole Woman's Health*, the Court also articulated how the effect of the Texas law "changed dramatically since petitioners filed their first lawsuit." *Whole Woman's Health*, 579 U.S. at 602, 136 S. Ct. at 2306. It noted that the petitioners' claim rested "in significant part upon later, concrete factual developments." *Id*. The petitioners in the first suit "brought their facial challenge to the admitting-privileges requirement *prior to its enforcement*—before many abortion clinics had closed and while it was still unclear how many clinics would be affected." *Id*. But the petitioners in the second case brought "an as-applied challenge to the requirement *after* [the law's] *enforcement*—and after a large number of clinics have in fact closed." *Id*. In contrast to the case at bar, "[t]he postenforcement consequences of [the Texas law] were unknowable before it went into effect." *Id*. But here, there are no factual developments or change in circumstances that now exist, but unknowable when Saylor previously filed his third amended complaint in *Saylor I*.[9]

It is also apparent that Saylor's ADA and BA claims arise out of the same nucleus of operative facts as those portions of the § 1983 claims in *Saylor I* that challenged his placement in solitary confinement. This is aptly demonstrated by Saylor's request for leave to file a third amended complaint in Saylor I, in which he described the proposed pleading:

> Attached to this motion is an unsigned copy of Plaintiff's proposed Third Amended Complaint. Other than renaming the complaint as "Third Amended Complaint", the proposed amendments are set forth in new paragraphs 84 through 94, inclusive [comprising "Eleventh Cause of Action Against All Defendants, Americans With Disabilities

---

Rehabilitation Act. *See Shelton v. Arkansas Dep't of Human Servs*., 677 F.3d 837, 843 (8th Cir. 2012) ("a claim based upon improper medical treatment decision[s] may not be brought pursuant to either the ADA or the Rehabilitation Act.").

[9] Saylor discusses at length another ADA and Rehabilitation Act case in a prison setting, *Rinehart v. Weitzell*, 964 F.3d 684 (8th Cir. 2020) (holding inmate diagnosed with diverticulitis sufficiently alleged disability discrimination where prison revoked privileges based on his refusal to move to housing unit in which cells did not contain toilets). See Filing 91 at 24. *Rinehart* has nothing to do with claim preclusion or res judicata, nor does it contain a novel application of law or establish a new or previously ambiguous right.

Act"].[10] The proposed amendments expand on previous allegations set forth in paragraphs 54 and 73 of the Plaintiff's Second Amended Complaint, and gather those allegations for what they actually comprise, which is a discrimination claim under the Americans with Disabilities Act.

*Saylor I*, Filing 225 at 2, ¶ 1. Saylor also argued in his brief in support of the request that "he has never had the opportunity to have a merits determination on his factual allegations in their fair context, which is that of the Americans with Disabilities Act. While the ADA context may have been obscure, it was nonetheless adequate." *Saylor I*, Filing 226 at 3, ¶ 9.

Finally, in conjunction with his brief opposing Frakes' motion to dismiss the present action, Saylor filed a "motion requesting consideration of issue of directions" in which he "moves the court to be aware that that … Plaintiff has not yet completed a proposed second [*sic*] amended complaint" but "still fully intends to request the Court's leave to file a second [*sic*] amended complaint, …." (Filing 90.) Liberally construing this filing as a motion for extension of time to seek leave to amend, it will be denied and the court will enter judgment dismissing this case with prejudice.

"Although the district court 'should freely give leave [to amend] when justice so requires,' Fed. R. Civ. P. 15(a)(2), a district court does not abuse its discretion in denying leave to amend where the plaintiff made no motion for leave to amend and did not explain the substance of his proposed amendment." *United States ex rel. Ambrosecchia v. Paddock Lab'ys, LLC*, 855 F.3d 949, 956 (8th Cir. 2017) (internal quotation and citation omitted); *see also Gomez v. Wells Fargo Bank, N.A.*, 676 F.3d 655, 665 (8th Cir. 2012) ("A district court does not abuse its discretion in failing to invite an amended complaint when plaintiff has not moved to amend and submitted a proposed amended pleading."). This court's local rules also provide that a party who move to amend "must file as an attachment to the motion an unsigned copy of the proposed amended pleading that clearly identifies the proposed amendments." NECivR 15.1(a).

The court liberally granted Saylor's repeated motions for extensions of time to respond to Frakes' motion to dismiss, from August 12, 2021, until April 27, 2022,

---

[10] See *Saylor I*, Filing 225-1, at 30-39.

and additional time has passed since then. Saylor chose to stand on his pleadings in the face of Frakes' motion to dismiss, which clearly identified the deficiency of his second amended complaint. *See Mitan v. McNiel*, 399 F. App'x 144, 145 (8th Cir. 2010) (finding no abuse of discretion in district court's denial of plaintiff's post-dismissal motion for leave to amend). The court will not allow this case to be drawn out any further.

## V. CONCLUSION

Saylor's earlier lawsuit filed in this court, *Saylor v. Kohl*, No. 4:12-CV-3115 ("*Saylor I*"), is res judicata as to all claims alleged in the present action, which will be dismissed with prejudice.

IT IS ORDERED:

1. Defendant's motion to dismiss (Filing 61) is granted, and this action is dismissed with prejudice.

2. Final judgment shall be entered by separate document.

3. Plaintiff's "motion requesting consideration of issue of directions" (Filing 90) is denied in all respects.

Dated this 27th day of June 2022.

BY THE COURT:

*Richard G. Kopf*

Richard G. Kopf
Senior United States District Judge